IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOEL PAUL LAROUSSE, *individually and as next friend of minor JDL, et al.*, Plaintiffs, | ) ) ) ) ) |
| v. | ) CIVIL ACTION NO. 1:18-00080-CG-N |
| EDWARD LEE HAMMOND, JR., *et al.*, Defendants. | ) ) ) ) ) |

## REPORT AND RECOMMENDATION

This action is before the Court on the motion to remand under 28 U.S.C. § 1447(c) (Doc. 4) filed by the Plaintiffs. The Court has referred the motion to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (2/23/2018 electronic referral). Defendants Derwin Daniels and AAA Aluminum Enclosures, LLC (collectively, "the Removing Defendants") have timely filed a response (Doc. 22) in opposition to the motion. No reply to the response was filed, the deadline to do so has passed, and the motion to remand is now under submission. (*See* Doc. 9).

Upon consideration, and pursuant to § 636(b)(1)(B)-(C) and Rule 72(b)(1), the undersigned will recommend that the Plaintiffs' motion to remand (Doc. 4) be **DENIED** by the Court.

### I.  *Background*

The Plaintiffs commenced this case on October 5, 2016, by filing a complaint in the Circuit Court of Mobile County, Alabama (*see* Doc. 1-2 at 1 – 4), alleging causes of action arising from an automobile accident involving the Plaintiffs and

Defendant Edward Lee Hammond, Jr. The Plaintiffs amended their complaint several times over the course of the state court proceedings (*see id.* at 5 – 54). On January 12, 2018, the Plaintiffs filed their Second Amended Complaint, which joined the Removing Defendants as parties to the state court action. (*See id.* at 19 – 38). On February 7, 2018, the Plaintiffs filed their Third Amended Complaint. (*See id.* at 40 – 54). On February 20, 2018, the Removing Defendants removed the case to this Court under 28 U.S.C. §§ 1441(a). (*See* Doc. 1). The Plaintiffs filed and served the present motion to remand (Doc. 4) two days later. Later that same day, the Removing Defendants filed an amended notice of removal (Doc. 6) for the stated purpose of "set[ting] forth more clearly the citizenship of the limited liability company Defendant and confirm[ing] that complete diversity exists."[1]

## II.  *Analysis*

Where, as here, a case is removed from state court, "[t]he burden of establishing subject matter jurisdiction falls on the party invoking removal." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411–12 (11th Cir. 1999).[2] *Accord, e.g.*, *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012)

---

[1] Because the amended notice of removal reproduces the entire original notice as amended, the undersigned will hereinafter refer only to the amended notice.

[2] The Court is not limited to matters raised by the parties in determining the existence of subject matter jurisdiction. "It is . . . axiomatic that the inferior federal courts are courts of limited jurisdiction. They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Accordingly, "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Id.* at 410. *See also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, (2006) ("[C]ourts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.").

("The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction."). The Removing Defendants allege diversity of citizenship under 28 U.S.C. § 1332(a) as the sole basis for this Court's original jurisdiction. *See* 28 U.S.C. § 1446(a) ("A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal…containing a short and plain statement of the grounds for removal…").

"Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Thus, a " 'party removing a case to federal court based on diversity of citizenship bears the burden of establishing the citizenship of the parties.' " *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1225 (11th Cir. 2017) (quoting *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (per curiam)). *See also, e.g., Ray v. Bird & Son & Asset Realization Co., Inc.*, 519 F.2d 1081, 1082 (5th Cir. 1975) ("The burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction . . ." (citing *Mas v. Perry*, 489 F.2d 1396 (5th Cir. 1974)).[3] Diversity jurisdiction also requires that "the matter in controversy exceed[] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 & n.4 (11th Cir. 2010). The Plaintiffs argue that the Removing Defendants have failed both to show that the

---

[3] "The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981." *E.g., Smith v. Shook*, 237 F.3d 1322, 1325 n.1 (11th Cir. 2001) (per curiam).

amount in controversy meets the jurisdictional threshold, and to establish the citizenships of the natural person parties.

### a. Amount in Controversy

The Third Amended Complaint, the operative complaint both currently and at the time of removal,[4] alleges ten causes of action under state law – five for various categories of negligence, and five for various categories of wantonness – none of which demands a sum certain. Instead, each count concludes with a demand for various categories of damages, with the negligence counts demanding general and/or compensatory damages, and the wantonness counts demanding general and/or punitive damages. "Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). "What counts is the amount in controversy at the time of removal. It is less a prediction of how much the plaintiffs are ultimately likely to recover, than it is an estimate of how much will be put at issue during the litigation; in other words, the amount is not discounted by the chance that the plaintiffs will lose on the merits." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (citation and quotation omitted). "When the complaint does not claim a specific amount of damages,

---

[4] "Jurisdictional facts are assessed on the basis of plaintiff's complaint *as of the time of removal.*" *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 n.13 (11th Cir. 1994). *See also, e.g.*, *Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1287 (11th Cir. 2011) ("The existence of federal jurisdiction is tested as of the time of removal. *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294–95 (11th Cir.2008). Jurisdiction is determined by looking to the face of the plaintiffs' well-pleaded complaint, so we examine the plaintiffs' original complaints entered at the time of removal. *See Kemp v. Int'l Bus. Mach. Corp.*, 109 F.3d 708, 712 (11th Cir. 1997).").

removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Williams*, 269 F.3d at 1319.

In their notice of removal, the Removing Defendants first argue:

> Based on the allegations of the Third Amended Complaint, the requisite amount in controversy is satisfied as the Plaintiffs allege they are "permanently injured", have experienced physical pain, mental anguish, and will experience future medical, hospital, and other medical expenses. Additionally, Joel Larousse is making a claim for lost wages, future lost wages, and loss of use and value of his vehicle. The Plaintiffs have not entered any stipulations limiting any award that may be made, and have not provided any affidavits waiving any recovery above $75,000,00.

(Doc. 6 at 3, ¶ 12). As the Plaintiffs correctly point out, however, the Eleventh Circuit has found that a similar record, without more, "failed to show that the amount in controversy more likely than not exceeds $75,000." *See Williams*, 269 F.3d at 1318-20 ("Williams filed a complaint in the State Court of Fulton County, Georgia, alleging that she tripped over a curb while entering one of Best Buy's retail stores and sustained injuries as a result of Best Buy's negligence. In addition to permanent physical and mental injuries, the complaint alleges that Williams incurred substantial medical expenses, suffered lost wages, and experienced a diminished earning capacity. The complaint then alleges that Williams will continue to experience each of these losses for an indefinite time into the future. For these injuries, the complaint seeks general damages, special damages, and punitive

damages in unspecified amounts…In this case, it is not facially apparent from Williams' complaint that the amount in controversy exceeds $75,000. We therefore look to Best Buy's notice of removal. Although the notice of removal clearly asserts that the jurisdictional requirement is satisfied, the only fact alleged in support of that assertion is that Williams refuses to stipulate that her claims do not exceed $75,000. There are several reasons why a plaintiff would not so stipulate, and a refusal to stipulate standing alone does not satisfy Best Buy's burden of proof on the jurisdictional issue. Thus, the pleadings are inconclusive as to the amount in controversy.").[5]

Unlike the defendant in *Williams*, the Removing Defendants do present more. Specifically, they cite to discovery responses served by Plaintiff Joel Paul Larousse (hereinafter, "Joel") (Doc. 6-1 at 529 – 552), which they assert demonstrate that, "[t]hrough July 2016, Plaintiff Joel Larousse has had over $20,760.05 in general damages including medical bills, the lost value of his vehicle, and the expense of his

---

[5] *Also cf. Porter v. MetroPCS Commc'ns Inc.*, 592 F. App'x 780, 783–84 (11th Cir. 2014) (per curiam) (unpublished) ("MetroPCS notes that Porter's demand for attorney's fees, costs, and punitive damages must be included in the calculation of the amount in controversy. MetroPCS then informs us that attorney's fees and costs can equal thirty percent of the recovery. Worse still, punitive damages can add up to nine times compensatory damages. We do not doubt that this is the case. Unfortunately for MetroPCS, those multiples do us no good without a base amount to multiply. Any concrete amount we derive from them would be hopelessly speculative. []The notice of removal then cites the 'substantial' costs of complying with the equitable relief Porter seeks. We are certain that the costs of compliance would be substantial. Like the fees, costs, and punitive damages, though, MetroPCS fails to put any concrete number on these compliance costs. Using them to calculate the amount in controversy would again require us to engage in unguided speculation. This we cannot do." (citations omitted)).

rental vehicle." (Doc. 6 at 4, ¶ 13). The $20,760.05 figure cited by the Removing Defendants is derived from the following:

- $9,000 book value on Joel's totaled vehicle (*see* Doc. 6-1 at 537).
- $1,307.17 in out-of-pocket expenses for damage to rental car (*see id.* at 534).
- $1,180.00 in total medical charges by Angela Champion PA (*see id.* at 543).
- $4,186.92 in total medical charges by Hall Therapy Services (*see id.* at 547).
- $4,309.00 in total medical charges by Providence Hospital (*see id.* at 548 – 549).
- $510.00 in total medical charges by the Orthopaedic Group PC (*see id.* at 550).
- $267.00 in total medical charges by Radiology Associates of Mobile (*see id.* at 552).[6]

The Plaintiffs correctly note that Joel's discovery responses also show that insurance covered the lion's share of these amounts. Joel's automobile insurer payed him $6,000 for the loss of his car, and his medical insurer covered all but $605.21 in medical expenses, leaving an unpaid "balance" of only $4,912.38. In response, however, the Removing Defendants correctly point out that Alabama law would still allow Joel to recover the full amount of the foregoing loses and expenses, not just the amounts left over after insurance payouts.[7]

---

[6] The actual sum of those amounts is $20,760.0<u>9</u>.

[7] *See Crocker v. Grammer*, 87 So. 3d 1190, 1193 (Ala. Civ. App. 2011) ("Under the common-law collateral-source rule, 'an amount of damages is not decreased by benefits received by a plaintiff from a source wholly collateral to and independent of the wrongdoer.' *Williston v. Ard*, 611 So. 2d 274, 278 (Ala. 1992). Based on that substantive rule of law, *see American Legion Post No. 57 v. Leahey*, 681 So. 2d 1337,

Nevertheless, $20,760.09 is still far below § 1332(a)'s jurisdictional threshold. As to this, the Removing Defendants assert:

> This figure does not include the continuing medical treatment the Plaintiff has received from 2016 forward and does not include any chiropractic bills which the Plaintiff has been receiving throughout any of his treatment…Under *BMW of N. Am. v. Gore*, if the Plaintiffs can meet the requisite showing for punitive damages then it is reasonable to assume a standard three times multiplier of compensatory may be used to determine a punitive damages award. *BMW of N. Am. v. Gore*, 517 U.S. 559 (1996). Here, the Plaintiffs demand for punitive damages are predicated upon their alleged belief that Defendant Hammond left the scene of the accident. Thus, when combining the known compensatory damages with the possible punitive damages, the amount in controversy exceeds $75,000.00.

1343 (Ala. 1996), *overruled on other grounds by Marsh v. Green*, 782 So. 2d 223 (Ala. 2000) (holding that the collateral-source rule 'as a whole is a rule of substantive law,' but one that contains a procedural component (emphasis omitted)), evidence of third-party payments of medical and hospital expenses was not admissible in personal-injury actions because such evidence was irrelevant to the issue of the appropriate measure of damages and unduly prejudicial to the plaintiff if used for other purposes. *See, e.g., Smith v. Springsteen*, 385 So. 2d 56, 58 (Ala. 1980); and *Gribble v. Cox*, 349 So. 2d 1141, 1143 (Ala. 1977)…Section 12–21–45 modifies the substantive component of the collateral-source rule. *See Melvin v. Loats*, 23 So. 3d 666, 669 (Ala. Civ. App. 2009). Whereas under the common-law collateral-source rule a jury could not in any case decrease the amount of damages awarded on account of a plaintiff's receipt of third-party payments of medical and hospital expenses, under § 12–21–45 a jury can now decide, based on the unique facts of each case, whether such a reduction would be appropriate. *See Senn v. Alabama Gas Corp.*, 619 So. 2d 1320, 1325 (Ala. 1993). Section 12–21–45 does not dictate any particular outcome, but, rather, it allows a jury to make its own informed decision as to the effect of third-party payments of medical and hospital expenses on a plaintiff's recovery. *See Marsh*, 782 So. 2d at 233 n.2 (noting that § 12–21–45 allows both sides an opportunity to explore the equities of reducing a personal-injury award based on third-party payments of medical and hospital expenses). In some cases, a jury might adopt the underlying philosophy behind the collateral-source rule that it is unfair for a tortious wrongdoer to receive the benefit of third-party payments, *see Leahey*, 681 So. 2d at 1338, while in other cases a jury may decide that it is the plaintiff who would receive an undue windfall if the damages were not reduced to account for the compensation the plaintiff had already received in the form of third-party payments. *Marsh, supra.*").

(Doc. 6 at 4, ¶ 13). The Removing Defendants do not identify what part of *BMW of North America. v. Gore* supports their assertion that this Court can reasonably assume a "standard three times multiplier of compensatory" for purposes of establishing § 1332(a)'s requisite amount in controversy. Nevertheless, under Alabama law, "in all civil actions where an entitlement to punitive damages shall have been established under applicable laws," in general "no award of punitive damages shall exceed three times the compensatory damages of the party claiming punitive damages or five hundred thousand dollars ($500,000), whichever is greater." Ala. Code § 6-11-21(a). Here, the Removing Defendants have presented evidence demonstrating that Joel could seek at least $20,760.09 in compensatory damages. Three times that amount is $62,280.27, thus resulting in a combined compensatory and punitive damages award of $83,040.36. Indeed, in this scenario, under § 6-11-21(a) Joel could conceivably seek up to $500,000 in punitive damages, well over the jurisdictional threshold for § 1332(a). *See S. Fla. Wellness*, 745 F.3d at 1315 (determining the amount in controversy "is less a prediction of how much the plaintiffs are ultimately likely to recover, than it is an estimate of how much will be put at issue during the litigation").[8] The Plaintiffs have failed to rebut this

---

[8] *Cf. McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 731–32 (11th Cir. 2014) (per curiam) (unpublished) ("When considering punitive damages as part of the jurisdictional amount, it becomes clear that Fifth Third has carried its burden to 'prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement.' *Pretka*[ *v. Kolter City Plaza II, Inc.*], 608 F.3d [744,] 752[ (11th Cir. 2010)]. While a mere conclusory allegation that the jurisdictional amount has been satisfied is insufficient to establish jurisdiction, *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319–20 (11th Cir. 2001), the defendant need not go so far as to prove that the plaintiff is likely to recover damages in such an amount, *see Frederick v.*

showing. Accordingly, the undersigned finds that the Removing Defendants have demonstrated by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement of § 1332(a).

### b. Citizenships of the Natural Person Parties

"Citizenship, not residence, is the key fact that must be alleged . . . to establish diversity for a natural person." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). "Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction. A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning

---

*Hartford Underwriters Ins. Co.,* 683 F.3d 1242, 1248 n.4 (10th Cir. 2012); *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.,* 637 F.3d 827, 830 (7th Cir. 2011). Rather, Fifth Third need only prove the jurisdictional facts necessary to establish that punitive damages in an amount necessary to reach the jurisdictional minimum are at issue—that is, that such damages *could* be awarded. *See Back Doctors,* 637 F.3d at 831 (finding CAFA's amount in controversy requirement satisfied where a potential award of punitive damages could be high enough to reach the jurisdictional minimum). We find that they have done so. []McDaniel sought compensatory damages for the entire amount of the checkcashing fees collected by Fifth Third, which, based on a declaration submitted by Fifth Third, amounts to $2,488,335. McDaniel also sought the maximum amount of compensatory damages available under the F[lorida Consumer Collection Practices Act]—$501,000. He also requested punitive damages under the FCCPA, which, in Florida, would be limited to $1,503,000—three times the compensatory award. *See* Fla. Stat. § 768.73(1)(a). Finally, McDaniel asked for punitive damages based on claims of common law fraud and fraud in the inducement. Again, Florida limits such an award to three times the amount of compensatory damages—$7,465,005. *See id.* These claims establish that CAFA's amount in controversy requirement has been met. *See Frederick,* 683 F.3d at 1248 ('A defendant seeking to remove because of a claim for punitive damages must affirmatively establish jurisdiction by proving jurisdictional facts that make it possible that punitive damages are in play.' (internal quotation marks omitted)); *Back Doctors,* 637 F.3d at 830 ('[U]nless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court.'). Any inquiry into whether McDaniel *would* actually recover these amounts is unnecessary and inappropriate. For the purposes of establishing jurisdiction, it is enough to show that he *could*.").

whenever he is absent therefrom." *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002) (citations, quotations, and footnote omitted). That is, "domicile requires both residence in a state **and** 'an intention to remain there indefinitely....' " *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013) (quoting *McCormick*, 293 F.3d at 1258 (internal quotation marks omitted)) (emphasis added). *See also Mas*, 489 F.2d at 1399 ("For diversity purposes, citizenship means domicile; mere residence in the State is not sufficient.").

Consistent with the foregoing authority, the Removing Defendants allege the following in their notice of removal to establish the citizenships of all natural person parties to this action:

> Joel Larousse, JDL, a minor, and LSF, a minor,[9] are residents and are domiciled in Mobile County, Alabama. *See* Third Amended Complaint attached as Exhibit A, ¶¶ 1-3. For diversity purposes, they are citizens of Alabama.
>
> Defendants Michael Wesley Jolley and Derwin Daniels are residents and are domiciled in Harrison County, Mississippi. *Id.* at ¶¶ 5, 7. For diversity purposes, they are citizens of Mississippi.
>
> …
>
> According to the Third Amended Complaint, Defendant Edward Lee Hammond, Jr., is a resident and domiciled in Harrison County, Mississippi. *Id.* at ¶ 4. Therefore, for diversity purposes, Edward Lee Hammond, Jr. is a citizen of Mississippi.

---

[9] In their capacities as representatives of their minor children, Joel and Brenda Larousse share the citizenships of the children. *See* 28 U.S.C. § 1332(c)(2) ("[T]he legal representative of an infant…shall be deemed to be a citizen only of the same State as the infant…").

(Doc. 6 at 3, ¶¶ 8 – 9, 11 (numbering omitted)).[10] The Plaintiffs correctly point out that the Third Amended Complaint, cited by the Removing Defendants in support of their allegations of domicile, alleges only the states of residence of the natural person parties *(see* Doc. 6-1 at 413, ¶¶ 1 – 5, 7).[11] However, the Removing Defendants correctly respond that, while "[r]esidence alone is not the equivalent of citizenship,…the place of residence is prima facie the domicile" when there is an evidentiary challenge to a party's citizenship. *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954). *Accord Slate v. Shell Oil Co.*, 444 F. Supp. 2d 1210, 1215 n.9 (S.D. Ala. 2006) (Steele, J.) ("[W]hile the two concepts are analytically distinct, a party's place of residence is *prima facie* evidence of his domicile.").[12] The Plaintiffs offer no

---

[10] Daniels is alleged to be the sole member of Defendant AAA Aluminum Enclosures, LLC, the only artificial entity party to this action. (*See* Doc. 6 at 3, ¶ 10). The Removing Defendants have provided evidence in support of this allegation (*see* Doc. 6-1 at 496; Doc. 22-1 at 11), and the Plaintiffs do not challenge that claim. Accordingly, AAA Aluminum shares Daniels's citizenship for purposes of diversity jurisdiction. *See Rolling Greens*, 374 F.3d at 1022 ("[A] limited liability company is a citizen of any state of which a member of the company is a citizen.").

[11] An affidavit by Derwin Daniels attached to the notice of removal also claims only that he is "a resident of Mississippi." (Doc. 6-1 at 494).

[12] Of course, the fact that residence may be *prima facie* <u>evidence</u> of domicile does not relieve the party invoking diversity jurisdiction of the burden of <u>alleging</u> a natural person party's place of domicile/citizenship, rather than simply that party's place of residence. The Eleventh Circuit has repeatedly held that mere allegations of residence do not satisfy that pleading burden. *See Travaglio*, 735 F.3d at 1269 ("As we indicated in remanding this case for jurisdictional findings, the allegations in Travaglio's complaint about her citizenship are fatally defective. Residence alone is not enough."); *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1342 n.12 (11th Cir. 2011) ("Ordinarily, the complaint must allege the citizenship, not residence, of the natural defendants."); *Beavers v. A.O. Smith Elec. Prods. Co.*, 265 F. App'x 772, 778 (11th Cir. 2008) (per curiam) (unpublished) ("The plaintiffs' complaint alleges only the residence of the nearly 100 plaintiffs, not their states of

evidence to rebut that *prima facie* showing here. Moreover, in response to the present motion to remand, the Removing Defendants have presented additional evidence that further supports a determination that all natural person parties are domiciled in, and therefore citizens of, the states they are respectively alleged to be in the notice of removal.[13] *See* (Doc. 22-1); *Stine*, 213 F.2d at 448 ("Residence in fact, and the intention of making the place of residence one's home, are essential elements of domicile. Words may be evidence of a man's intention to establish his domicile at a particular place of residence, but they cannot supply the fact of his domicile there. In

---

citizenship. Because the plaintiffs have the burden to affirmatively allege facts demonstrating the existence of jurisdiction and failed to allege the citizenship of the individual plaintiffs, the district court lacked subject matter jurisdiction on the face of the complaint." (internal citation and quotation omitted)); *Crist v. Carnival Corp.*, 410 F. App'x 197, 200 (11th Cir. 2010) (per curiam) (unpublished) ("The allegation that Crist is a 'resident' of Florida is insufficient for diversity jurisdiction purposes because residency is not the equivalent of citizenship." (citing *Cong. of Racial Equal. v. Clemmons*, 323 F.2d 54, 58 (5th Cir. 1963) ("Diversity of citizenship, not of residence, is required under 28 U.S.C.A. § 1332. Wherever jurisdiction is predicated upon the citizenship (or alienage) of the parties, it should be noted that **since residence is not the equivalent of citizenship, an allegation that a party is a resident of a certain state or foreign country is not a sufficient allegation of his citizenship**." (quotation and citation omitted) (emphasis added))).

[13] The evidence presented by the Removing Defendants actually indicates that Defendant Jolley could be domiciled in Florida rather than Mississippi. (*See* Doc. 22-1 at 12 – 19). However, there is no evidence indicating that Jolley is domiciled in Alabama. Thus, regardless of whether Jolley is a citizen of Mississippi or Florida, he does not share the citizenship of any plaintiff. *See Sunseri v. Macro Cellular Partners*, 412 F.3d 1247, 1249 (11th Cir. 2005) ("This Court reviews the district court's finding regarding domicile under a clearly erroneous standard. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. The record in this case could support a finding that Sunseri was domiciled in Nevada. But it also supports a finding that Sunseri was domiciled in California. Given this record, we conclude that the district court did not clearly err in relying on Sunseri's own statements, executed under oath in the mortgage documents, to determine that he was domiciled in California." (citations and quotations omitted)).

such circumstances, the actual fact of residence and a real intention of remaining there, as disclosed by his entire course of conduct, are the controlling factors in ascertaining his domicile.").

Accordingly, the undersigned finds that the Removing Defendants have sufficiently shown the citizenships of all parties for purposes of § 1332(a), and that complete diversity of citizenship existed at the time of removal. Because the Removing Defendants have sufficiently demonstrated all requisites for this Court to exercise subject matter jurisdiction over this case under § 1332(a), and because the Plaintiffs raise no procedural defects in the removal process, the Plaintiffs' motion to remand (Doc. 4) is due to be **DENIED**.

### III.  *Conclusion*

In accordance with the foregoing analysis, the undersigned **RECOMMENDS** that the Plaintiffs' motion to remand (Doc. 4) be **DENIED**.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the

district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    **DONE** this the 10th day of April 2018.

                                  */s/ Katherine P. Nelson*
                                  **KATHERINE P. NELSON**
                                  **UNITED STATES MAGISTRATE JUDGE**